UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MALIK THOMPSON,** | **MASTER FILE: 06-CV-3490 (WJM)** |
| **Plaintiff,** | |
| v. | |
| | **OPINION** |
| **ADMINISTRATOR OSCAR AVILES, SGT. SALVATORE NOSTRAM, OFFICER LILLIAN WHITTED, OFFICER CHRIS RODRIGUEZ, M. WILLIAMS, MARCIE GANERT, DRESSLER KEEFE CORPORATION,** | **HON. WILLIAM J. MARTINI** |
| **Defendants.** | |

Malik Thompson
#572966
SBI 00290783
Southern State Correctional Facility
P.O. Box 150
Delmont, NJ 08314

(*Plaintiff*)

Michael L. Dermody
Office of Hudson County Counsel
Administration Building Annex
567 Pavonia Avenue
Jersey City, NJ 07306

(*Counsel for Defendants*)


**WILLIAM J. MARTINI, U.S.D.J.:**

Defendants have moved on summary judgment to dismiss Plaintiff's complaint. Plaintiff, a federal prisoner, alleges that Defendant prison officials (1) provided unsanitary water and crowded cells, in violation of the Constitution and state law, (2) failed to provide him with Halal meals, in violation of the First and Fourteenth Amendments, and (3) confiscated his trial transcripts, in violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution. With respect to the first set of allegations, the Court finds that Plaintiff has failed to exhaust his administrative remedies and dismisses those counts. With respect to the second and third sets of allegations, the Court finds that Defendants' versions of the facts, which Plaintiff does not contest, entitles it to summary judgment on those counts. Accordingly, Defendants' motion is **GRANTED**, and Plaintiff's complaint is **DISMISSED WITH PREJUDICE** except for the unsanitary-water and overcrowding claims, which are **DISMISSED WITHOUT PREJUDICE**.

I.   FACTS AND PROCEEDINGS

In this suit, a prisoner alleges that his prison subjected him to unconstitutional conditions of confinement. Plaintiff is Malik Thompson, an inmate who during the relevant period was confined to Hudson County Corrections Center ("HCCC"). (Statement of Material Facts Accompanying Mot. for Summ. J. 1.) The six Defendants are HCCC employees. (Compl. 1)

Thompson asserts three categories of claims. First, Thompson asserts that the

HCCC drinking and bathing water is contaminated and that HCCC's cells are overcrowded. (Compl. 14–15.) Second, Thompson, a Muslim, asserts that HCCC has denied his requests for Halal meals, in violation of his constitutional rights of religious freedom and equal protection.[1] (Compl. 17.) Third, Thompson asserts that HCCC confiscated transcripts from his state criminal proceedings. (Compl. 18–19). Thompson alleges that this violated his constitutional rights to free speech and access to courts and violated the Constitution's prohibitions on warrantless seizures, deprivation of property without due process, and cruel and unusual punishment.[2] (Compl. 18–19.)

Now Defendants move to dismiss Thompson's claims under both Federal Rule of 12(b)(6) or on summary judgment. (Mot. to Dismiss for Failure to State a Claim and/or Summ. J.) With respect to Thompson's first claim—regarding water contamination and overcrowding—Defendants argue that Thompson has failed to exhaust HCCC's administrative remedies. (Mot. 16, 24.) With respect to Thompson's latter two claims—regarding HCCC's denial to Thompson of Halal meals and its confiscation of Thompson's trial transcripts—Defendants argue that Thompson has failed to raise a disputed issue of material fact and that they are entitled to judgment as a matter of law.

## II.   DISCUSSION

---

[1] Halal is an Arabic term meaning "permissible." In this context, it refers to food that is permissible according to Islamic law.

[2] In his complaint, Thompson also asserts a claim based on exposure to second-hand smoke, but the Court has already dismissed that claim.

Courts may dismiss claims on summary judgment if there is "no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists where a reasonable trier of fact considering the entire record could rationally find in favor of the non-moving party in light of that party's burden of proof. Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007). The non-moving party may not defeat summary judgment merely by denying the allegations in the moving party's pleadings; rather, the non-moving party must locate in the record a genuine dispute over a material fact. Id.

**A.     The Water Contamination and Overcrowding Claims**

Defendants argue that Thompson cannot assert any claims based on allegations of contaminated water or overcrowding at HCCC because Thompson has not exhausted HCCC's administrative remedies for such complaints. The Court agrees that Thompson cannot assert federal claims based on these allegations because he has not exhausted HCCC's administrative remedies. The Court further holds that if Thompson cannot assert these federal claims, then the Court lacks jurisdiction over his related pendant state law claims.

Thompson's federal claims are barred by the Prison Litigation Reform Act of 1995. That act prohibits a prisoner from bringing an action under federal law based on prison conditions until he has exhausted his administrative remedies. Prison Litigation Reform Act of 1995 (PLRA) § 7, 42 U.S.C. § 1997e(a). A prisoner's failure to exhaust

will result in dismissal of claims requiring exhaustion.  See Woodford v. Ngo, 126 S. Ct. 2378, 2382, 2384 (2006).  Here, HCCC has provided an administrative process by which prisoners aggrieved by the conditions of their confinement may file complaints with prison administrators.  (Mot. Ex. G, Certification of Marcy Dressler-Gassert ¶¶ 1–2.)  But the HCCC Inmate Advocate, Marcy Dressler-Gassert, has certified that Thompson has not filed any complaints regarding overcrowded cells or contaminated water.  (Dressler-Gassert Certification ¶¶ 1–2.)  Thompson does not rebut this.  Accordingly, the Court must dismiss without prejudice Thompson's federal claims based on water contamination and overcrowding.

Because the Court dismisses Thompson's federal claims regarding water contamination and overcrowding, it lacks subject-matter jurisdiction to adjudicate his state law claims based on these same alleged injuries.  Here, the parties are non-diverse, so the Court's subject-matter jurisdiction arises only because Thompson asserts claims under federal law.  See 28 U.S.C. §§ 1331, 1332.  Where district courts have subject-matter jurisdiction over a claim, such as Thompson's federal claims, they have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  The Court's subject-matter jurisdiction over Thompson's state law claims would be merely supplemental, arising from § 1367(a), since it arises from the same controversy as Thompson's federal

5

water-contamination and overcrowding claims. But as explained above, the Court now dismisses those federal claims. Furthermore, Thompson's state law water-contamination and overcrowding claims are unrelated to his remaining federal claims, which are based on HCCC's denial of Halal meals and seizure of Thompson's trial transcripts.[3] Accordingly, the Court lacks supplemental (or any other) subject-matter jurisdiction over Thompson's state law claims arising from HCCC's alleged water contamination and overcrowding. The Court thus dismisses those claims as well.

     **B.**     **HCCC's Denial of Halal Meals**

Thompson argues that HCCC's refusal to provide him with Halal meals violates two constitutional rights. First, Thompson argues that HCCC's refusal to provide him with Halal meals violates his right to practice his religion, Islam. (Compl. 17.) Second, Thompson argues that HCCC's refusal to provide him with Halal meals coupled with its provision of Kosher meals to Jewish inmates violates his Fourteenth Amendment right to equal protection. (Compl. 17.)

Defendants now argue that the record contains no disputed issues of material fact with respect to Thompson's claims based on HCCC's denial of Halal meals, and Defendants further argue that they are entitled to summary judgment as a matter of law. This Court agrees.

---

[3]Indeed, below the Court dismisses these remaining federal claims as well, making dismissal of Thompson's state-law claims even more appropriate. See Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 196 (3d Cir. 1976).

In general, prisoners enjoy somewhat limited constitutional rights.  Shaw v. Murphy, 532 U.S. 223, 229 (2001).  The validity of a prison regulation or policy that infringes upon a prisoner's constitutional rights hinges upon whether the regulation or policy is "reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  This inquiry requires consideration of four factors: (1) the existence of a rational connection between the regulation or policy and a legitimate government interest, (2) the existence of any alternate means the prisoner may have to exercise the right infringed upon, (3) the impact that accommodation of the right would have upon guards, other inmates, and prison resources, and (4) the absence of ready alternatives available to the prison.  Id. at 89–90.  This inquiry applies to many infringements of a prisoner's constitutional rights, including religious rights under the First Amendment and rights to equal protection under the Fourteenth Amendment.  See  DeHart v. Horn (*DeHart II*), 390 F.3d 262, 264, 268–69 (3d Cir. 2004).

Here, the Court holds that Defendants are entitled to dismissal on summary judgment of Thompson's First and Fourteenth Amendment claims based on HCCC's denial of Halal meals.  As an initial matter, the Court notes that Thompson and HCCC do not dispute any issues of fact.  They agree that HCCC will not provide Thompson with Halal meals, that HCCC does allow the provision of Kosher meals to its Jewish inmates, and that HCCC does provide a vegetarian option to its inmates.  Furthermore, HCCC has provided evidence by way of exhibits and affidavits documenting justifications for its

meal policies, and Thompson does not challenge these. Accepting all the aforementioned unchallenged facts, the Court agrees with Defendants that they are entitled to judgment as a matter of law.

Applying the Turner considerations, the Court finds that HCCC's policy of denying Halal meals to Muslim inmates, even while allowing Kosher meals for Jewish inmates, is "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. First, the Court finds that there is a rational connection between this policy and HCCC's legitimate government interests. This policy serves several penological interests, including simplified food service, budgeting, and avoiding possible resentment and jealousy on the part of other inmates, all of which are legitimate. DeHart v. Horn (*DeHart I*), 227 F.3d 47, 53 (3d Cir. 2000). Preparing a specialized meal for a discrete but sizable group of inmates will surely increase the complexity and expense of food service. Also, Thompson's "request for a [religious diet] creates legitimate security concerns, including bringing additional foods from new sources into the Prison and the possible belief by other inmates that [Thompson is] receiving special treatment." Id. at 52–53 (first alteration in original). Denying Thompson Halal meals thus serves HCCC's legitimate interests "in an efficient food system and in avoiding inmate jealousy." Id. at 53.

These arguments apply with less force to HCCC's service of Kosher meals to Jewish inmates. The Court is particularly persuaded by the fact that all Kosher meals at

HCCC are donated and thus do not impose the same budgetary and administrative costs that preparing Halal meals would. (Mot. 15.) As Defendants state, "HCCC incurs no costs . . . by allowing these two Jewish inmates to receive Kosher meals." (Mot. 15.) Accordingly, any disparate treatment of Jewish and Muslim inmates is justified by legitimate penological interests. See *DeHart II*, 390 F.3d at 271–72 ("[B]ecause we find that the burden imposed by DeHart's [Buddist] diet exceeds the burden imposed by accommodating Muslim and Jewish inmates, we affirm the District Court's grant of summary judgment for Appellees on DeHart's Equal Protection claim.").

Second, the Court finds that HCCC has permitted Thompson alternative means of engaging in religious expression. HCCC provides weekly religious services, the ability to pray five times a day, and prayer groups. (Mot. 12.) Indeed, as Defendants note, "there is not one other instance in which Plaintiff alleges his First Amendment right to freedom of religion was not being accommodated." (Mot. 12.) Also, it is not dispositive that Halal meals may be required by the tenets of Thompson's faith. Rather, "courts must examine whether an inmate has alternative means of practicing his or her religion generally, not whether an inmate has alternative means of engaging in the particular practice in question." *DeHart I*, 227 F.3d at 55.

Third, the Court finds that accommodation of Thompson's request for Halal meals would have a nontrivial impact upon the guards, other inmates, and prison administration in general. As explained above, accommodation would place a strain on HCCC's budget

9

and security. This would divert resources from other prison expenditures—such as expenditures on food for the prison population at large. It would also divert security toward quelling the possible resentment resulting from Thompson's special treatment.

Fourth, the Court finds that HCCC already provides the only reasonable alternative to true Halal meals: vegetarian meals. At HCCC all inmates who wish to conform their diets to religious beliefs may receive vegetarian meals. (Mot. 10.) While it may be that not all vegetarian meals are Halal, they do avoid a vast portion of Haram (impermissible) food, such as pork products or the meat of animals not properly slaughtered.[4] The Court finds that this is HCCC's only apparent reasonable alternative to providing true Halal meals.

In summary, the Turner factors all suggest that HCCC has a legitimate penological interest in not providing Thompson with Halal meals. Accordingly, Thompson's claims based on this denial are dismissed.

### C. HCCC's Seizure of Thompson's Trial Transcripts

Thompson alleges that HCCC violated several of his constitutional rights by seizing his transcripts from his state criminal proceedings while he was in pretrial confinement. Specifically, Thompson alleges that on April 11, 2006, Defendants

---

[4] Whether any given item is Halal (or Kosher for that matter) for the purposes of the First Amendment is subjective, depending upon the individual's personal beliefs. See generally Islamic Food & Nutrition Council of Am., What is Halal?, http://www.ifanca.org/halal (last visited March 4, 2008). Here, Thompson has not indicated whether he believes HCCC's vegetarian meals to be Halal.

Whitted, Rodriguez, and Williams ransacked Thompson's cell and seized the transcripts. (Compl. 19.) Thompson, represented by counsel, eventually pled guilty to armed robbery on September 19, 2006. (Mot. Ex. B, Certification of Timothy Moriarty ¶¶ 4, 8.)

Thompson claims that HCCC's seizure violated his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution. (Compl. 19.) Defendants now argue that Thompson's allegations do not support his constitutional claims. The Court agrees with Defendants.

### 1. First Amendment

Thompson has two possible First Amendment claims. First, he might argue that HCCC's seizure of his trial transcripts violates his freedom of speech. Second, he might argue that HCCC's seizure violates his right to court access. Unfortunately for Thompson, both claims fail.

With respect to the first claim, prisoners have a First Amendment free-speech interest in access to their mails. See Jones v. Brown, 461 F.3d 353, 364 (3d Cir. 2006); Bieregu v. Reno, 59 F.3d 1445, 1458 (3d Cir. 1995). A prison's systematic interference with an inmate's mail may chill his expression. See Jones, 461 F.3d at 358–59. Yet, sporadic or one-time interference poses little chilling danger. See id., 461 F.3d at 538 (holding that a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech").

Here, HCCC's seizure did not rise to the level of a free speech violation. Thompson alleges only a single, isolated incident in which HCCC seized his transcripts. (Compl. 19.) This one-time interference poses little danger that Thompson's speech will be chilled, and it accordingly does not violate his right to free speech.

With respect to the second claim, prisoners have a fundamental constitutional right of access to courts. Roman v. Jeffes, 904 F.2d 192, 197 (3d Cir. 1990). A prison's interference with or seizure of a prisoner's court documents may infringe this right. Jones, 461 F.3d at 358–59. However, this claim requires the claimant to show that the alleged deprivation hindered his efforts to pursue a legal claim. Lewis v. Casey, 518 U.S. 343, 351 (1996).

Thompson is unable to make the requisite showing of harm to assert a denial-of-access claim. In his complaint he does not allege any real resulting harm, such as an inability to pursue a desirable litigation tactic. Nor is any such harm obvious. The transcript appears to have been from a trial that resulted in a hung jury. (Moriarty Certification ¶ 5.) Also, months after HCCC confiscated Thompson's transcript—during which period Thompson likely had ample opportunity to obtain another transcript—Thompson voluntarily chose to plead guilty and thus had little need for a transcript. (Moriarty Certification ¶ 4.) It is particularly noteworthy that he had the assistance of counsel in making this decision. (Moriarty Affidavit ¶ 8.) Because Thompson does not assert that HCCC's seizure of his transcripts hindered his ability to

12

pursue a legal claim, HCCC did not unconstitutionally deny Thompson access to the courts.

### 2. Fourth Amendment

Thompson alleges that HCCC's seizure of his transcripts violated the Fourth Amendment. Presumably, Thompson means to argue that HCCC's seizure violated the Fourth Amendment's proscription against illegal searches and seizures.

Thompson's Fourth Amendment claim quickly fails as a matter of law. The Fourth Amendment's proscription against illegal seizures does not apply within the confines of a prison cell. Hudson v. Palmer, 468 U.S. 517, 526 (1984). Accordingly, Thompson cannot assert a Fourth Amendment claim based on HCCC's seizure of his transcripts.

### 3. Due Process

Thompson alleges that HCCC's seizure of his transcripts violates the Fifth Amendment. Presumably, Thompson means to argue that the seizure deprived him of property without due process.

This claim fails. States may not seize a citizen's property without due process of law. Higgins v. Beyer, 293 F.3d 683, 693–94 (3d Cir. 2002). This normally requires a predeprivation hearing. Id. However, where such a hearing is impracticable, postdeprivation process will suffice. Id. Courts generally agree that predeprivation hearings are not practicable before prisons seize prisoner contraband. See Hudson, 468 U.S. at 533; Murphy v. Collins, 26 F.3d 541, 544–45 (5th Cir. 1994). Courts also

generally agree that in these situations, state tort law provides sufficient process to preclude a due process violation.  See Hudson, 468 U.S. at 534–35; Murphy, 26 F.3d at 543–44.

Here, New Jersey tort law provides an adequate remedy for a prison's deprivation of prisoner property.  Defendants, as public employees, may be liable for any tortious injury to Thompson "to the same extent as a private person."  N.J. STAT. ANN. § 59:3-1(a).  Indeed, Thompson fails to even allege that New Jersey's tort remedies would be insufficient.  Accordingly, the Court finds that New Jersey has provided Thompson with an adequate postdeprivation procedure to remedy HCCC's seizure of his transcripts.  Thompson's due process claim thus fails.

### 3.     Eighth Amendment

Thompson alleges that HCCC's seizure of his trial transcripts constitutes cruel and unusual punishment, in violation of the Eighth Amendment.  The Court disagrees.

The Eighth Amendment protects prisoners from the excesses of prison authorities.  Williams v. Mussomelli, 722 F.2d 1130, 1132–33 (3d Cir. 1983).  However, not every government action that affects a prisoner's well-being is subject to Eighth Amendment scrutiny.  Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000).  Rather, Eighth Amendment claims against a prison official must satisfy two requirements.  Id.  First, the deprivation alleged must be serious.  Id.  Second, the prison official must be deliberately indifferent to inmate health or safety.  Id.

14

Applying the above standards, the Court finds that HCCC's seizure of Thompson's transcripts does not constitute cruel and unusual punishment, in violation of the Eighth Amendment. Prison actions that constitute cruel and unusual punishment are more austere than an isolated seizure of paperwork. Examples include inappropriately long periods of confinement, denial of basic amenities such as light or showers, and wanton infliction of pain. See Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 417–18 (3d Cir. 2000); Nami v. Fauver, 82 F.3d 63, 66–67 (3d Cir. 1996). Indeed, several courts have held that a seizure of prisoner property without more is not cruel and unusual. See Teahan v. Wilhelm, 481 F. Supp. 2d 1115, 1121 (S.D. Cal. 2007); Ashford v. Barry, 737 F. Supp. 1, 2 (D.D.C. 1990). Along the spectrum of punishment a prison could inflict upon its inmates, seizure of paperwork seems more irksome than cruel and unusual. Accordingly, the Court finds that HCCC's seizure of Thompson's trial transcripts did not constitute cruel and unusual punishment.

### III.   CONCLUSION

Defendants' motion is **GRANTED**, and Thompson's complaint is **DISMISSED WITH PREJUDICE** except for Thompson's unsanitary-water and overcrowding claims, which are **DISMISSED WITHOUT PREJUDICE**. An Order accompanies this Opinion.

s/ William J. Martini  
William J. Martini, U.S.D.J.